C. M. Cureton, Chief Justice.

## GENERAL MOTORS ACCEPTANCE CORPORATION v. STATE.

No. 5105. Decided January 23, 1929.
(12 S. W., 2d Series, 968.)

*Slough & Gibson,* for appellant, with whom *Underwood, Strickland & Thomerson* appeared as *amici curiae,* cited: Bill of Rights; Bonnett v. Vallier, 17 L. R. A. (N) 486; City of Dallas v. Mitchell, 245 Fed., 944; City of Texarkana v. Reagan, 247 Fed., 816; Cooley's Constitutional Limitations, Vol. 2, p. 1232; Commercial Investment Trust v. United States, 261 Fed., 330; Crossman v. Galveston, 247 S. W., 810; Goldsmith Grant Co. v. United States, 254 U. S., 505; Hoover v. People, 187 Pac., 531; H. & T. C. Ry. v. Dallas, 84 S. W.,

648; Jackson v. United States, 295 Fed., 620; Kent's Commentaries, 14th Ed., Vol. 2, p. 500–1; Lewis' Sutherland on Statutory Construction, Vol. 2, p. 1020; Logan v. United States, 260 Fed. 746; Moody v. McKinney, 53 S. E., 543; National Prohibition Act, Title 2, par. 26; Neill v. Johnson, 234 S. W., 147; One Hudson v. State, 187 Pac., 806; Robinson Cadillac Co. v. Ratkein, 177 N. W., 337; Revenue Statute, R. S. U. S., 3450, Comp. Stat. 1916–6352; Seiginous v. Limehouse, 93 S. E., 193; Schroeder v. Sweat, 96 S. E., 881; Shawnee Nat'l Bank v. United States, 249 Fed., 583; Skinner v. Thomas, 87 S. E., 976; South Georgia Motor Co. v. Jackson, 114 S. E., 478; Spann v. City Dallas, 235 S. W., 513; State v. Crosswhite, 80 So., 813; State v. Hall, 114 S. E., 250; State v. Johns Hansen Co., 172 N. W., 36; State v. Paige Touring Car, 115 Atl., 275; Stockwell v. State, 221 S. W., 923; The Goodhope, 268 Fed., 194; U. S. Comp. Stat., 1916, Sec. 2140, par. 4141; United States v. Brockley, 266 Fed., 1001; United States v. Kane, 273 Fed., 275; United States v. One Ford Coupe, 71 L. Ed., 181; United States v. Mincy, 254 Fed., 287; United States v. One Haynes, 268 Fed., 1003; United States v. One Paige, 277 Fed., 524; United States v. Sylvester, 273 Fed., 253; United States v. Stowell, 133 U. S., 1; United States v. Two Gallons Whiskey, 213 Fed., 986; United States v. Yuginovich, 276 U. S., 450; Vance v. State, 93 So., 881; Van Oster v. Kansas, 71 L. Ed., 354; White Auto Co. v. Collins, 206 S. W., 748; Willis Campbell Act, (Comp. Sta. An. Sup., 1923, par. 10138¼ *et seq.*).

*J. S. Stallings* and *S. E. Fish,* for appellee, cited: Anderson v. Automobile Finance Co., 260 S. W., 1092; Cooley's Constitutional Limitations, 8th Edition, 119, 1256–1257; Dobbins Distillery v. U. S., 96 U. S., 395; Edwards v. Morton, 46 Texas, 792; Ex Parte White, 198 S. W., 583; Goldsmith-Grant Co. v. United States, 254 U. S., 505; Intention of Legislature, 36 Cyc., 1106; Landers v. Com., 126 Va., 780; Robinson Cadillac M. Car Co. v. Ratikin, 104 Nebr. 369; State v. Peterson, 107 Kan., 641; State v. Stephens, 109 Kan., 254; State v. One Studebaker Auto, 210 N. W., 194; United States v. One Ford Coupe Automobile, 272 U. S., 321; Van Oster v. State of Kansas, 272 U. S., 456; White, H. A., Auto Co. v. Collins, 206 S. W., 748; King v. Com., 127 Va., 800.

Mr. Judge NICKELS delivered the opinion of the Commission of Appeals, Section A.

In the above-styled cause there pending the Court of Civil Appeals, Seventh District, has certified the following statement and questions:

"The following are the agreed facts in evidence on the trial of this case in the District Court of Armstrong County, Texas:

A six cylinder 26-44 Buick Roadster was seized by the sheriff of Armstrong County while in the possession of D. H. Carter, alias J. E. Knopp, and Bill Garrett, upon State Highway Number Five, while being used and operated by the said Carter and Garrett upon said State Highway in Armstrong County, Texas, who were then and there unlawfully transporting in said automobile about forty-nine short quarts of whiskey and gin, all in the view and presence of T. F. Brunson, Sheriff of Armstrong County, Texas. That said automobile was useful and valued at the approximate sum of $1,000.00, and that within twenty-four hours from the time and date of said seizure, the said T. F. Brunson, Sheriff as aforesaid, made his report to the County Clerk of Armstrong County, Texas, as required by law. That the said D. H. Carter and Bill Garrett have since been convicted of the violation of Article 5112 of the Revised Statutes of Texas, under the charge above stated.

That said automobile was sold to the said D. H. Carter, alias J. E. Knopp, on the 30th day of November, 1926, by the Foster-Davis Motor Corporation at Tulsa, Oklahoma, under a conditional sales contract, and the unpaid part of the purchase price, at the time of the sale, on the date of the delivery of said car, was $632.00, for which provision was made that such balance be paid in monthly installments and to secure the payment of which the said D. H. Carter, alias Knopp, executed a conditional sales contract, which was transferred to and is now held by the General Motors Acceptance Corporation. That all the payments on said purchase price of the car were made with the exception of $210.72, bearing interest at the rate of ten per cent from the 30th day of August, 1927. The said conditional sales contract provided that the title would not pass until the full purchase price had been paid.

That the General Motors Acceptance Corporation had no knowledge of the use that was being made to said automobile by the said Carter and Garrett.

On the 17th of August, 1927, the State of Texas, acting by and through the County Attorney of Armstrong County, Texas, brought suit in the District Court of Armstrong County, Texas, against D. H. Carter, alias Knopp, Bill Garrett, and one Buick Six Auto-

mobile, seeking to have said automobile condemned as a public nuisance, and to have same sold and disposed of as a public nuisance under Article 5112 of the Revised Civil Statutes of Texas.

The General Motors Acceptance Corporation filed its petition in intervention in which it set up the conditional sale of the automobile to the Defendant Knopp (Carter); the retention of the title in the written conveyance to secure the payment of the unpaid purchase money, and the assignment of such conditional sales contract to it. It was agreed, as above stated, that the Intervenor had no knowledge of what use the Defendants were making of the car.

Article 5112, Revised Civil Statutes, 1925, provides for the seizure and condemnation of any automobile, etc., by the County and District Attorney, to have same condemned as a public nuisance, and to have the same destroyed, if it is not valuable or useful for some legitimate purpose, and if valuable or useful for some legitimate purpose, to be sold under order of Court and the proceeds to be paid into the State Treasury.

We certify to your Honors these questions:

First: By the procedure outlined in Article 5112, does the sale by the State of Texas of the automobile in question dispose of the interest of the Intervenor as an innocent lien holder?

Second: Has the Intervenor, as an innocent lien holder, the right to participate in the proceeds of such sale?"

Article 5112, R. S. 1925, is in these words:

Any animal, automobile, flying machine, airplane, boat, ship, or other vehicle or instrumentality used for the unlawful transportation or storage of intoxicating liquor as defined in this title is declared to be a public nuisance; and any animal, automobile, flying machine, airplane, boat, ship, or other vehicle or instrumentality used in the presence and view of any peace officer of this State for the unlawful transportation or storage of intoxicating liquor as so defined, or for the commission of any act made unlawful by this Act, shall be seized without warrant by such peace officer, which officer shall within twenty-four hours after such seizure file with the county clerk a detailed statement of the time when, the place where and the circumstances under which he seized such property, and shall appraise the value thereof. At any time before the trial of the condemnation suit herein provided for, the owner of said property seized or the person in whose possession or under whose control the same was at the time of seizure, may replevy the same by giving bond with two or more good and sufficient sureties, or a solvent

guaranty or surety company, chartered or authorized to do business under the laws of this State, to be approved by the officer making the seizure or by his successor in office, payable to the State of Texas in an amount equal to the reasonable market value of the property replevied as fixed by the appraisal of said officer seizing same, conditioned that should said property in said action be condemned as a nuisance, the obligors in such bond will pay to the State of Texas the reasonable cash market value of the property replevied at the time it was seized, and all costs. In the event the property seized is not replevied, same shall be stored in a bonded warehouse in the county where such property is seized and within reasonable reach of the officer seizing same, then such property shall under the direction of the District Judge having jurisdiction of said suit be stored in a safe place and be safely kept in good condition, to abide the final judgment of the proper court with reference thereto, the fees for storage to be taxed as costs in any proceeding for the condemnation or recovery of said property. The county or district attorney shall after the seizure of said property institute suit in a court of competent jurisdiction to condemn the same as a public nuisance, and to have the same destroyed if the same is not valuable or useful for some legitimate purpose, and if valuable or useful for some legitimate purpose to be sold under order of said court, and the proceeds of such sale shall be immediately paid into the State Treasury. In cases where the property is destroyed the county or district attorney shall receive fifteen dollars in each case, and the sheriff or other officer making the seizure and sale shall receive ten dollars, to be paid by the county in which said condemnation suit is tried.

That which makes a "public nuisance", in the expressions of the statute, is user of a named instrumentality "for the unlawful transportation or storage of intoxicating liquor". Three things are there plainly recognized: (a) Ownership of the whole or of a partial interest in "an animal, automobile", etc., is lawful; (b) the "animal, automobile", etc., may be and probably is intrinsically valuable; (c) the "animal, automobile", etc., is cleansed of taint by alchemy of replevy by the "owner" or sale to the "owner" or other bidder.

Manifestly, the seizure, sale, etc., are provided by way of penalty for the crime of "unlawful transportation or storage of intoxicating liquor." And, in our opinion, there is lack of all warrant for a supposition that a person who is entirely innocent of commission or complicity in the offense is to be punished by forfeiture of his property. The supposition is devoid of merit for at least two rea-

sons: (a) The language of the statute (recognizing, as it does, the inherent innocence of the property itself) implies the contrary; (b) Our Bill of Rights, including due process as an indispensable requisite, opposes insuperable obstacles to that species of fiat, and it cannot be supposed that the Legislature intended to do what it was powerless to do.

We are aware of decisions to the effect that due process, in so far as guaranteed in the Federal Constitution, is not contemned in a statute designed for that purpose (see, Van Oster v. Kansas, 272 U. S., 456), but the actual result disclosed in the opinion cited aids demonstration of their unsoundness. Stella Van Oster (against whom no charge was made) lost her property although the alleged criminal was acquitted by a jury of his peers and although the thing itself was not guilty, within the fiction of moral taint of inanimates. There was lacking the "analogy of the law of *deodand*," the element of "negligence of the owner," the "goring by an ox so that he shall be stoned" and the "falling of a thing to cause a man's death" referred to in Goldsmith-Grant Co. v. United States, 254 U.' S., 505, 510–11. The opinions of the Supreme Court of the United States are entitled to great respect, but in a case like this they are not obligatory. There is to be found in Goldsmith-Grant Co. v. United States virtually an apology for the doctrine applied in Van Oster v. Kansas and what amounts to a recognition of the impossibility of squaring the doctrine "with the accepted tests of human conduct." Our duty includes use of independent judgment, and in its performance we cannot accept the doctrine urged. Clem v. Evans, Tex. Comm. App., 291 S. W., 871.

The mortgagee (General Motors Acceptance Corporation) intervened and prayed that it be allowed "recovery of the car or judgment against the proceeds in the amount of its debt," etc. We perceive no ground for doubting propriety of the intervention.

But for the intervention the sale ordered would be subject to the lien. With the mortgagee in court in this way, complete title passed at the sale but the proceeds became subject to the mortgagee's claim.

In consequence of the matters stated, each of the questions certified should be answered "Yes" and such answers we recommend.

The opinion of the Commission of Appeals answering the certified questions is adopted and ordered certified.

*C. M. Cureton,* Chief Justice.